SOUTH BEND TOY MANUF'G CO. v. DAKOTA FIRE & MARINE INS. CO.

1. A person authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by issuing or renewing policies, must be regarded as a general agent of the company. 2 S. D. 17, affirmed.

2. When the facts are undisputed, the court is authorized to determine whether they create an agency, and, if so, with what powers and limitations. This power of the court should be exercised only in a very clear case, and in no case when the evidence is to any extent conflicting, or when the evidence is such that different minds might honestly draw different conclusions therefrom.

(Syllabus by the Court. Opinion filed July 13, 1892.)

Appeal from district court, Davison county. Hon. D. HANEY, Judge.

Opinion upon rehearing. The judgment of the court in 2 S. D. 17 is reaffirmed.

*H. C. Preston*, for appellant and petitioner for rehearing.

The manner in which a party treats one who apparently acts as his agent and holds him up before third parties is a sufficient implication of an agency. Lowell v. Williams, 125 Mass. 439; Houghton v. Maner, 55 Mich. 323; New England v. Addison, 15

Neb. 335; Wilcox v. Railroad, 24 Minn. 269; Griggs v. Seldon, 58 Vt. 561; Walsh v. Insurance Co., 73 N. Y. 5. The question of agency is always one of fact and therefore a question for the jury. Robert v. Pepple, 21 N. W. 319; Williams v. Railroad, 14 N. W. 97; Mares v. Railroad, 21 N. W. 5; Railway v. Stant, 17 Wall. 663.

When a warranty is given by the insured, no matter how immaterial the fact warranted may be, he will be held strictly to his contract. Wood on Ins., 272, 284, 313; Jeffres v. Insurance Co., 22 Wall. 47; Insurance Co. v. France, 91 U. S. 510; Ripley v. Insurance Co., 30 N. Y. 137; Byers v. Insurance Co., 35 Ohio St. 606; Davenport v. Insurance Co., 6 Cush. 340; Brown v. Insurance Co., 18 N. Y. 385; Barteau v. Insurance Co., 67 N. Y. 595; Chesman v. Insurance Co., 18 Ins. Law J. 241. An insurance broker is the agent of the party by whom he is employed to effect insurance and not of the companies in which such insurance may be placed. In surance Co. v. Minnequa, 11 Ins. Law J. 892; Peoria v. Insurance Co., 14 Iowa, 323; Standard Oil v. Insurance Co., 64 N. Y. 85; Mellen v. Insurance Co., 17 N. Y. 609; Draper v. Insurance Co., 2 Allen, 569; Hartford v. Reynolds, 36 Mich. 502; Insurance Co. v. Weary, 4 Bradw. 74; Insurance Co. v. Mann, 4 Id. 485; Lange v. Insurance Co., 3 Mo. App. 591.

*A. E. Hitchcock,* for respondent.

CORSON, J. This case was argued and submitted at the April term, 1891, of this court, and the judgment of the court below was affirmed. The opinion of the court is reported in 2 S. D. 17. A petition for a rehearing was filed, and, by reason of the important questions involved, was granted. The case was reargued at the October term, when the counsel for appellant not only argued the case orally, but submitted an elaborate and exhaustive brief and printed argument. The first point made by the learned counsel is that the court erred in its decision in holding that Ben Phelon, who issued the policy in controversy in this action, was the general agent of the defendant, and contends he was only a special agent. We assumed, in our opinion, without discussing the question, that Phelon was a general agent of the defendant, and a careful examination of the question leads us to the conclusion that we were correct in designating him as such. The instrument ap-

pointing Mr. Phelon is given in full in the record, and the part material to the question here presented is as follows: "The Dakato Fire and Marine Insurance Company of Mitchell having appointed Ben Phelon, of New Orleans, in the county of ——— and state of La., the agent of said company, to solicit and contract for insurance by said company against loss or damage by fire, lightning, and tornado, and the risks of inland navigation and transportation, in the locality above described, and the vicinity thereof, and to issue the policies therefor, subject to such rules, directions, and regulations as said company has made, or may hereafter from time to time impose; and subject, further, to the right of said company to cancel any policies or contracts of insurance that may be made by said agent; and also further subject to the right of said company, by notice in writing addressed to said agent, at the place above indicated, or personally by an agent of this company duly authorized to revoke and discontinue said agency: It is agreed that said agent will mail direct to the said company, at Mitchell, Dakota, the application or daily report, upon which any policy may be written, not later than the day on which such policy is written, or the date of the making of the contract of insurance; and shall, upon request of the company, furnish to it full information respecting any risk upon which he may have issued a policy of insurance. *    *    *"

It will be observed that by this instrument Phelon was authorized to solicit and contract for insurance at the city of New Orleans, "and the vicinity thereof," and "to issue policies therefor." He was required to furnish the company "full information respecting any risk upon which he might issue any policy of insurance." It will thus be seen that he was not a mere soliciting agent, but that he had full authority to contract for insurance, and issue policies therefor, without communicating with the home office otherwise than by reporting the policies he had issued. This power would, of course, include the power of fixing the amount of premium to be paid, and all the other incidents connected with the contract. It will be further noticed that his authority not only included the city of New Orleans, but "the vicinity thereof,"—a rather comprehensive term. That he possessed blank policies,

signed by the proper officers of the company, is not only apparent from the terms of the contract, but from the evidence in the case, as it seems he issued the policy in controversy without submitting the risk to the home office. In a well-considered case, decided by the commissioners of appeals of the state of New York, DWIGHT, commissioner, says: "It is clear that a person authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by issuing and renewing policies, must be regarded as a general agent of the company." Pitney v. Insurance Co., 65 N. Y. 6. See, also, Post v. Insurance Co., 43 Barb. 359; Carroll v. Insurance Co., 40 Barb. 292; Lightbody v. Insurance Co., 23 Wend. 18; McEwen v. Insurance Co., 5 Hill, 105; Gloucester Manuf'g Co. v. Howard Ins. Co., 5 Gray, 498; Krumm v. Insurance Co., 40 Ohio St. 225. The part of the opinion in Pitney v. Insurance Co. above quoted is made part of the text in May, Ins. § 126. See, also, § 129. Under the head of "Universal, General, and Special Agents," Mr. Mechem, in his work on Agency, says: "A universal agent is one authorized to transact all the business of his principal of every kind. A general agent is an agent who is empowered to transact all the business of his principal of a particular kind or in a particular place. A special agent is one authorized to act only in a specific transaction." Mechem, Ag. § 6. Ben Phelon comes, we think, precisely within the definition of a general agent as given above. The authorities, no doubt, are to some extent conflicting, but it seems to us the rule laid down in the decisions in New York and by Mechem is as precise and definite as any that can be given.

The second and main contention of the counsel is that the question of agency is always a question of fact for the jury. In this contention we cannot agree with counsel. We know of no rule that makes the question of agency an exception to the general rule that, when there is not sufficient evidence, in the opinion of the court, to warrant a jury in finding a verdict,—and if found it would be set aside by the court,—it is the duty of the court to direct a verdict. And the same rule applies to the admission of evidence of the acts of one to bind the principal, who has not by the evidence been shown to be an agent. Mr. Mechem

in his work on Agency says: "And so, when the facts are undis-
puted, the court must determine whether they create an agency,
and, if so, with what powers and limitations; and this is equally
true whether it is sought to establish the agency by previous au-
thorization or by subsequent ratification." Mechem, Ag. § 105;
Gulick v. Grover, 33 N. J. Law, 463; London Savings Fund Soc.
v. Hagerstown Savings Bank, 36 Pa. St. 498.

This seems to be a reasonable and proper rule. Surely a per-
son ought not to be bound by the acts or declarations of an al-
leged agent until there is sufficient evidence to warrant a jury
in finding that such person is in fact an agent. This power of
the court should, undoubtedly, be exercised only in a very clear
case, and in no case when the evidence is to any extent conflicting,
or when the evidence is such that different minds might honestly
draw different conclusions therefrom. The inferences or conclu-
sions, however, must be such as can reasonably be drawn from the
evidence itself. Jurors cannot be permitted to base their verdict
upon mere speculation or conjecture of facts that might exist, or
upon theories invented by themselves or by counsel, entirely un-
supported by the evidence. Stone v. Crow, 2 S. D. 525. This is
well illustrated by the contention of the learned counsel in this
case. Speaking of the map sought to be introduced in evidence,
he says: "The jury would have been justified in drawing the in-
ference that, when Jacob D. Henderson had the conversation with
Badet, the secretary of plaintiff, in reference to insurance, he then
made said map with the knowledge of said Badet, for the purpose
of obtaining said insurance, and that in this case the map was so
used." Yet Badet and Henderson were both witnesses in the
case, and the map is not mentioned or referred to by either of
them. Now, if the fact was as claimed, would it not have been
brought out in the evidence of one of them at least? Would not
the inference that all men would naturally draw from the evi-
dence of these two witnesses be that no such fact existed? Would
not the failure of either witness to refer to or mention this map
be quite conclusive that no such fact as that stated existed? If,
as it was claimed, this map constituted material evidence in the
case, would it be probable that able counsel in examining these

14 S D

witnesses would not have brought out some evidence in regard to the map? The absence of any such evidence would seem to be conclusive that the fact did not exist.

The learned counsel further insists that there was evidence tending to prove that Henderson Bros. were acting as the agents of plaintiff in obtaining the insurance policy in controversy, and that it should, therefore, have been submitted to the jury. But, upon a re-examination of the evidence as found in the record, we are unable to discover such evidence. Henderson Bros. were local insurance agents at South Bend, where the plaintiff's property insured was located, and where the plaintiff was engaged in business. They were agents for and represented a number of insurance companies. This fact must be kept in view, in order to a full understanding as to what occurred between them and the officers of the plaintiff. Having a clear view, then, of the position of the parties, the plaintiff with property in South Bend which it desired to keep insured, and Henderson Bros. agents at South Bend for various insurance companies desiring to secure business, we can see that only one construction could reasonably be given the little conversation occurring between Henderson and Badet in regard to insurance, and that is that Henderson Bros., as agents of the various companies they represented, wanted to secure the plaintiff's insurance business, and that plaintiff consented that they might insure this property in their companies. Any other construction, when the relative situations of the parties are considered, would be a clear perversion of the language used. The plaintiff probably never thought of employing an agent to act for it, but consented that Henderson Bros., who were selling insurance, might insure its property. The case is quite analogous to May v. Assurance Co., 27 Fed. Rep. 260. The evidence so clearly established the fact that Runk & Co. were the agents or subagents of Ben Phelon, and consequently of the defendant, that the court was fully justified in so holding as a matter of law. There was no question upon that branch of the case to submit to a jury. The evidence shows that Runk & Co. and Ben Phelon were the agents of each other in placing certain insurance business, for which each paid the other a commission. It is true Runk & Co.

were unknown to the defendant, but, it having intrusted Ben Phelon with authority to contract for insurance and issue policies therefor, the company necessarily permitted him to use such methods in examining and determining the character of risks as he might deem proper. As stated by Judge BREWER, in the case last cited: "It is not to be expected that a general agent located in a city like Minneapolis can personally go and examine all the risks offered him. * * * If, instead of making an examination himself, he prefers or is willing to take the representations of another insurance agent, the company is bound by the act." If he may rely on such agents in the city, he may, we think, rely upon agents in whom he has confidence in a distant city. The company selects its own agent after fully investigating his character and fitness for the position, and his acts, within the line of his agency and authority, are binding upon his principal. Lyon v. Insurance Co., 6 Dak. 67, 50 N. W. Rep. 483.

We are unable to see upon what possible theory a verdict for the defendant, had the jury so found, could have been permitted to stand, if it had been based upon the falsity of the representations in the policy. That a policy was issued by Phelon upon the property, that the property was destroyed by fire, and that plaintiff paid to the party who delivered the policy the premium, are facts not controverted. That Runk & Co. actually received the premium is virtually conceded; that they exchanged business with Phelon, for which he paid them a commission, is not controverted; and that they kept a mutual account, charging each other with premiums and commissions, is clearly proven,—the only controversy being as to the state of their accounts at the time the premium for this policy was received; and that they allowed Henderson Bros. a commission on all policies requested by them is clearly proven. This being so, Runk & Co. and Henderson Bros. were practically subagents of the defendant, and no representations of either of them to Phelon or the defendant could bind the plaintiff. Lyons v. Insurance Co., *supra.*

The learned counsel for the defendant contends that the law applicable to insurance brokers applies to Henderson Bros. and Runk & Co., but under the evidence in this case we cannot so hold.

They in no sense, so far as the evidence discloses, acted as brokers for the plaintiff.

Counsel also contends that as the court submitted to the jury the question, for whom were Henderson Bros. and Runk & Co. acting in receiving the premium? It was equally its duty to submit to the jury the question, for whom were these parties acting in procuring the insurance? But, assuming the court properly submitted the question as to the premium to the jury, it does not follow that it should have submitted the question of agency, as to which there was no conflict in the evidence. There being no such conflict, the court was the proper tribunal to determine whether or not the jury would be justified upon the facts in finding them the agents of the plaintiff; and upon this evidence we think the court ruled correctly.

We have re-examined the instructions of the court, and find no error therein. The whole charge of the court must be taken together. The following portion of the charge of the court was excepted to: "The premium was paid to Henderson Bros. Was it paid to them by the plaintiff with the belief that they were the agents of the defendant, and authorized to receive the same?" This alone might be objectionable, but this is only a portion of the sentence. The court proceeds, and concludes the sentence as follows: "And had the defendant intentionally, or by want of ordinary care, caused or allowed the plaintiff to believe that Henderson Bros. were authorized to receive the same as agents of the defendant?" As thus stated, we think that portion of the charge is substantially correct. The next portion of the charge that the defendant's counsel contends does not state the law correctly is as follows: "The court instructs you that if you find from the evidence that the amount of the premium, less the commissions thereon, usual in the insurance business, reached Ben Phelon, or any other agent of the defendant authorized to receive the same, as hereinbefore defined and explained, by means of drafts transmitted in the usual course of business, or by the offset of mutual accounts current in the usual course of business, the premium was received by the defendant." The objection made to this is that there was no evidence as to what the usual commissions were. In

this we think the counsel is in error. Henderson and Mrs. Henderson stated that, in remitting premiums to Runk & Co., they usually deducted 15 per cent. of the premium as commissions. Phelon testified that in his business with Runk & Co. he usually allowed them 15 per cent., and they allowed him the same. Runk and a clerk of that firm testified to substantially the same as to the commissions. Under the views we have expressed, the latter part of the instruction was not material in this case, as it is virtually conceded that Runk & Co. received the premium. Phelon, by transmitting to them an executed policy, made them his agents for collecting the premium; and when they received it, it was in effect received by him, and hence by the company. But, had the instruction been material in the case, we think the law was correctly stated. In Wood on Insurance (page 74) the author says: "It may be said that payment of the premium to an officer or duly-authorized agent of a company, in any of the ordinary modes adopted in business, will be binding upon the company." See, in addition to the cases cited in our former opinion, Insurance Co. v. Huth. 49 Ala. 529; First Baptist Church. v. Brooklyn Fire Ins. Co., 19 N. Y. 305; Wood, Ins. pp. 921, 925; Young v. Insurance Co., 45 Iowa, 377; Insurance Co. v. Carter, (Pa. Sup.) 11 Atl. Rep. 106; Pittsburg Boat Yard Co. v. Western Assur. Co., *Id.* 801.

The judgment of the court is reaffirmed.

BENNETT, J., concurring,

KELLAM, P. J., did not sit in the case, nor take any part in the decision.