## SMITH v. MUTUAL CASH GUARANTY FIRE INS. CO.

Where an application for fire insurance, solicited by one holding himself out as agent of insurer, was accepted by insurer, together with the premium on the policy which was issued, the presumption is that the one so holding himself out as agent was authorized to transact the business.

Where the undisputed evidence shows that a fire policy was issued by insurer on an application authoritatively taken, it was the duty of the court in its charge to recognize the existence of the agency and to determine the powers and limitations of the agent.

Where in an action on a fire policy, the defense was that insured set the fire, or procured it to be set, and insurer was allowed to show, as bearing on the question of motive, that the building valued in the application at $2,500 was worth in the opinion of witnesses but $850, insured was properly permitted to testify in rebuttal that the application was prepared by the insurance agent, that the valuaion was placed therein by him, and that the agent stated to him that the valuation was immaterial as long as the building was not insured over its value.

Where an insurance agent is on the ground and in possession of means of knowing all the facts material to the risk, his statements contained in the application which he presumptively fills out, though they may be erroneous, are binding on the company in an action on the policy issued thereon.

Where, in an action on a fire policy, the defense was made that insured set the fire, or procured it to be set, and on cross-examination it was shown that insured executed a mortgage on the premises about two weeks before the fire, on redirect examination, he was properly permitted to explain that the mortgage was intended to cover another building on the same lot and the lot, but not the insured buliding.

, Evidence which is competent on an actual issue in the case will be presumed to have been introduced only for the purpose for which it was proper, and cannot operate to enlarge the issue made by the pleadings, though incidentally tending to establish a fact outside the issue.

The breach of a condition, representation, or warranty contained in a fire policy, if relied on as a defense in an action on the policy, must be specially pleaded.

The breach of condition, representation, or warranty contained in a fire policy, though established by the evidence, should not be submitted to the jury in the charge, where such breach has not been pleaded.

A list of the goods in a store destroyed by fire, made a short time thereafter by insured who testified that he was absolutely fam-

iliar with his stock and able to recollect a greater part of the goods in the store, may be used to refresh his recollection.

Where insured testified that he was absolutely familiar with his stock, which was destroyed by fire, and able to recollect the greater part of the goods in his store and to recall them to mind, it was proper to receive his opinion as to the value thereof.

Evidence, in an action on a fire policy, **Held** to warrant a finding that the goods alleged to have been removed from the store a few days before the fire were of inconsiderable value and taken without fraudulent intent.

It is not an abuse of discretion to deny a new trial, on the ground of newly discovered evidence, which does not directly tend to establish or disprove any issue within the pleadings.

It is not an abuse of discretion to deny a new trial, on the ground of newly discovered evidence, which only goes to discredit or impeach a witness.

(Opinion filed, August 29, 1907.)

Appeal from Circuit Court, Faulk County. Hon. LORING E. GAFFEY, Judge.

Action by E. D. Smith against the Mutual Cash Guaranty Fire Insurance Company on a fire policy. Judgment for plaintiff, and defendant appeals. Affirmed.

*Boyce & Warren*, for appellant.

Where the insured is guilty of misrepresentation and breach of warranty in reference to the subject of insurance and of fraud in the inception of the policy, no valid contract is formed, the policy is void and never attaches to the risk. Knudson v. Legion of Honor, 7 S. D. 214; Am. Ins. Co. v. Gilbert, 27 Mich. 429; Bennett v. Agricultural Ins. Co., 51 Conn. 504; Sheldon v. Mich. Millers Mut. Ins. Co., 124 Mich. 303. The credibility of plaintiff as a witness was for the jury, and for this reason alone, if for no other, the question of agency should have been submitted to the jury. McGill v. Young, 16 S. D. 360; Iowa National Bank v. Sherman, 103 N. W. 19. The presumption is that the insured understands the nature of the paper that he signs. Consequently his signature to the application being proved the burden is upon him to show ignorance of the false answers or statements in the application and his knowledge or ignorance is a question for the jury. Mattson v. Modern Samaritans, 91 Minn. 434; 98 N. W. 330; N. Y. Life Ins. Co., v. Fletcher, 117 U. S. 519; Ryan v. World Mutual Life Ins.

✳

Co., 19 Am. Rep. 490. Want of knowledge of the false statement in the application and good faith on the part of the insured must exist or he will be bound by such statement even though the application is prepared by the agent of the company and the false statement inserted therein by him. Johnson v. Dak. F. &. M. Ins. Co., 1 N. D. 167; Stone v. Hawkeye Ins. Co., 28 N. W. 47; Ins. Co. v. Fletcher, 117 U. S. 519; Pottsville Mut. F. Ins. Co. v. Fromm, 100 Pa. 347. An overvaluation, such as ordinarily could not arise from a mere difference of opinion, will avoid the policy whether intentional or not. Boutelle v. Westchester Fire Ins. Co., 31 Am. Rep. 666; Fireman's Fund Ins. v. McGreevy, 118 Fed. 415, 55 C. C. A. 543. Where the policy is a valued one an overvaluation is material and presumptively fraudulent and avoids the policy. Sullivan v. Hartford Fire Ins. Co. 34 S. W. 999; Ind. Farmers' Live Stock Ins. Co. v. Bogeman, 36 N. E. 927; Rosser v. Georgia Home Ins. Co., 29 S. E. 286; Wood v. Fireman's Fire Ins. Co., 126 Mass. 316. Overvaluation in any case will avoid the policy where the statement as to value is made a warranty. Bennett v. Agri. Ins. Co., 51 Conn. 504; Nassamer v. Susquehanna Fire Ins. Co., 109 Pa. 507; Am. Ins. Co. v. Gilbert, 27 Mich. 429; Dunham v. Citizens Ins. Co., 34 Wash. 205; Briggs v. Firemen's Fund Ins. Co., 65 Mich. 52. Any intentional misrepresentation will avoid the policy. Field v. Ins. Co. of North America, 9 Fed. Cases 16; Lycoming Fire Ins. Co. v. Rubin, 79 Ill. 402; Hersey v. Mermac County Mut. Fire Ins. Co., 27 N. H. 149.

*J. H. Bottum*, for respondent.

Breach of warranty, misrepresentation and fraud are affirmative defenses and must be affirmatively alleged. Plaintiff had the right to presume by the absence of any allegation suggesting it, that Defendant would not make this defense and could not be expected to meet it. Sutherland v. Standard Life & Accident Co., 54 N. W. 453; Insurance Co. v. Ewing, 92 U. S. 377; Caplis v. American Fire Insurance Co., 62 N. W. 440; Chambers v. North Western Mutual Life Insurance Co., 67 N. W. 367. The defense was one which the Company had a right to waive and the fact that no notice of such a defense was attached to the general issue, would give counsel for the plaintiff

to understand that the Company did not intend to rely on any such breach and would be likely to prevent Plaintiff's counsel from making such preparations on that point as he otherwise might do. Insurance Co. v. Curtis, 32 Mich. 402. Facts showing increase of risk must be set up in the answer. Tischler v. Cal. Mutual Fire Insurance Company, 4 Pac. 1169; Newman v. Springfield F. & M. Insurance Co., 17 Minn. 123. So also as to defense of other insurance. Smith v. Home Insurance Co., 47 Hun. 30; Mutual Benefit Association v. Nancarrow, 71 Pac. 423; Cassacia v. Phoenix Ins. Co., 28 Cal. 629; Employers Liability Co. v. Burr, 68 Fed. 873; British American Ins. Co. v. Cooper, 40 Pac. 147; Benj. v. Connecticut Indemnity Association, 11 So. 628; Sussex Co. Mutual Ins. Co. v. Woodruff, 26 N. J. Law 541; Bittinger v. Providence Wash. Ins. Co., 24 Fed. 549; Phoenix Co. v. Burnd, 20 N. W. 105. Facts material to the risk, made known to the agent within the scope of his authority are constructively known to the company and cannot be set up to defeat a recovery on the policy. Before the execution of the policy the power and authority of a soliciting agent are coextensive with the business entrusted to his care and his positive knowledge of material facts is chargeable to his principal. May on Insurance Par. 132, 142 and 143; Vesey v. Comm. Union Assurance Co., 18 S. D. 632; Smith v. Ins. Co. of Dak. 6 Dak. 67; Harding v. Norwich Union; Fire Insurance Society, 10 S. D. 64; Miller v. Hartford Fire Ins. Co., 29 N. W. 411; Jordan v. State Ins. Co., 19 N. W. 917; Hagan v. Ins. Co., 46 N. W. 1114; Born v. Home Ins. Co., 94 N. W. 849; McKibbin v. Ins. Co., 86 N. W. 38; Crause v. Hartford Ins. Co., 44 N. W. 497. Agents for an insurance company, authorized to procure applications and forward them to the company, must be deemed the agents of the insurer in all that they do in preparing the application, or in any representations they make as to the character and effect of the statements therein contained. Kansel v. Fire Ins. Ass'n, 16 N. W. 430; Power v. Monitor Ins. Co., 80 N. W. 111; Rowley v. Ins. Co., 36 N. Y. 550. The question of ever-valuation is for the jury. Wich v. Equitable F. & M. Ins. Co., 31 Pac. 389; Keller v. Niagara Fire Ins. Co., 16 Wis. 523. Having prior to the commencement of the action desclaimed liability on certain grounds,

defendant cannot after the commencement of the action assign other grounds on which to base its denial of liability. Continental Ins. Co. v. Waugh, 83 N. W. 81; Ballou v. Sherwood, 49 N. W. 790; Power v. Monitor Ins. Co., 80 N. W. 111; Donville v. Farmer's Ins. Co., 71 N. W. 517c; Towle v. Ins. Co., 51 N. W. 987; Carlen v. Mutual Ins. Co., 15 N. W. 452; Wolf v. Grand Lodge, 60 N. W. 445; Minnock v. Eureka F. M. Ins. Co., 51 N. W. 367; Ins. Co. v. Curtis, 32 Mich. 302; Smitte v. German Ins. Co., 65 N. W. 236; W. & A. Pipe Lines v. Home Ins. Co., 22 Atl. 665; Taylor v. Supreme Lodge, 97 N. W. 680; Matthinson v. Mercantile Ins. Co., 31 N. W. 297; Gans v. Ins. Co., 43 Wis. 109; Railway Co. v. McCarthy, 96 U. S. 258.

FULLER, P. J. The only defense pleaded to this action on an insurance policy, covering a stock of general merchandise, store building, and fixtures, is that the fire by which the building was destroyed originated through the fraud, connivance, and procurement of respondent after he had surreptitiously removed substantially all the goods and merchandise therefrom, and that such building was worth not to exceed $850, instead of $2,500, as alleged in the complaint. It is undisputed that the stock of goods was insured by appellant on the 13th day of May, 1904, for $1,500, the building for $850, and the fixtures for $150, and that the fire, resulting in a total loss, occurred the night of November 1st of that year, while respondent was in Redfield, 60 miles away. Two or three days before this policy for $2,500 was issued, John C. Fox, now a special agent of another fire insurance company, secured the application by calling upon respondent at his store in the village of Seneca, where he was then, and for more than seven years had been engaged in the retail mercantile business, carrying a general stock that would probably invoice something in excess of $4,500, and upon which $1,500 concurrent insurance was permitted. As respondent's application for the insurance solicited and obtained by Mr. Fox was transmitted to and accepted and retained by appellant, together with the premium of $40 for the policy, which was promptly issued thereon, the presumption is that he was duly authorized to transact the business. Though not controverted by the answer. it was shown by the unchallenged facts and circum-

stances that the policy was thus issued by appellant upon an apli-cation authoritatively taken, and in charging the jury it was the duty of the court to recognize the existence of the agency and en-tirely proper to determine from the undisputed evidence the powers and limitations of the agent. South Bend Toy Mfg. Co. v. Dakota Fire & Marine Ins. Co., 3 S. D. 205, 52 N. W. 866.

The theory of the defense was that the fire was set by or originated through the inrstumentality of respondent, and, while no fraud in the inception of the policy was alleged, appellant was allowed to show, as bearing upon the question of motive, that the building, valued in the application for insurance at $2,500, was worth, in the opinion of certain witnesses, but $850. Consequent-ly it was not erroneous to allow respondent to testify in rebuttal as follows: "Well, the gentlemen came in and asked me if I wanted to take out any insurance upon the building. First I asked him whom he represented. He told me. Then he asked me if I had time to go on and attend to the business at that time, and I told him I hadn't, so then he asked me if he could use my place to write. He said he would do some writing; that after I got through and had time we could arrange things; and during the time he was writing he wrote up this application. Then he came to me and wanted to know the amount that I wanted to place in the policy, and I told him. It was upon the goods that we were talking about at the time. I told him that I would take $1,500 upon the stock of goods. He had this $2,500 insurance already written in there at that time. He asked me if I couldn't take $1,000 upon the building, and I told him. 'No sir.' I thought it is too near the actual value of the building. 'Well,' he says, we can fix that all right by taking about $850 on the buildings, and the balance on fixtures. Of course, your fixtures,' he says, 'will make up the balance of the $1,000, your fixtures here.' I told him I had thought of the fixtures, and as he wrote up the amount he placed it in that shape, so he left it $2,500 in the application. I had to stand at that. There was nothing said between us about the amount more than I told him. It was more than the value of the build-ings, but he said it didn't make any difference. It wouldn't cut any figure in the insurance as long as the building wasn't insured

past its value. Q. On that representation you were induced to let it stand? A. I was; yes sir. Q. He took the application. A. Yes, sir; and I afterwards received the policy."

These insurance companies, stimulated to intense exertion by competition and profitable results, provide their agents with persuasive literature, and send them out to solicit business clothed with power to do in their behalf all that is necessary with reference to the duty of obtaining and forwarding applications to the home office or to some agent or officer authorized to issue and deliver policies. Persons dealing with such agents, appointed by the company presumptively on account of their integrity, have the right to rely upon their suggestions as to what is material or what constitutes a satisfactory answer to any question contained in the application, and when, as in this case, such representative is upon the ground and in possession of abundant means of knowing all facts material to the risk, his statements, contained in the aplication which he assumptively fills out, although they may be erroneous, are binding upon the company after the premium has been paid, the policy issued, and the property destroyed.

It is well settled that, where the agent fills up a blank application, and volunteers advice as to the character of the answer to be given to any material question contained therein, his act in so doing is the act of the company, and parol testimony is admissible to show the facts. Continental Life Ins. Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, 33 L. Ed. 341; Kausal v. Minnesota Farmers' Fire Ins. Ass'n, 31 Minn. 17, 16 N. W. 430, 47 Am. Rep. 776; Key v. Des Moines Ins. Co., 77 Iowa, 174, 41 N. W. 614; Insurance Co. v. Wilkinson, 13 Wall. (U. S.) 222; Smith v. Farmers' Ins. Co., 89 Pa. 287; German Ins. Co. v. Frederick, 57 Neb. 538, 77 N. W. 1106; Continental Ins. Co. v. Pearce, 39 Kan. 396, 18 Pac. 291; Andes Ins. Co. v. Fish, 71 Ill. 620; Grattan v. Metropolitan Ins. Co., 80 N. Y. 281; Williamson v. New Orleans Ins. Ass'n, 84 Ala. 106, 4 South. 36; Menk v. Home Ins. Co., 76 Cal. 50, 14 Pac. 837, 18 Pac. 117; Cagle v. Chillicothe Town Ins. Co., 78 Mo. App. 431; Deitz v. Ins. Co., 31 W. Va. 851, 8 S. E. 616; Dupree v. Virginia Home Ins. Co., 92 N. C. 417; Va. Fire & Marine Ins. Co. v. Goode & Co., 95 Va. 762, 30 S. E. 370;

May v. Buckeye Ins. Co., 25 Wis. 291; Sussex County Mutual Ins. Co. v. Woodruff, 26 N. J. Law, 541; Rockford Ins. Co. v. Nelson, 65 Ill. 415; 7 Ency. of Evidence, 543; May on Insurance, §§ 120, 132, 142, 143. Where a soliciting agent employed by the general agent for a particular locality without the knowledge of the resident manager of a foreign insurance company, waived a condition in the policy against incumbrances, it was held in this jurisdiction that the company was bound. Lyon v. Ins. Co. of Dakota, 6 Dak. 67, 50 N. W. 483; Harding v. Norwich Union Fire Ins. Society, 10 S. D. 64, 71 N. W. 755; Vesey v. Commercial Union Assurance Co., 18 S. D. 632, 101 N. W. 1074.

The foregoing authorities fully justify the following instruction; "Another reason the defendant contends the plaintiff cannot recover is the defendant says there was a mis-statement, that in making out the application for insurance the property was overvalued, and that thereby the policy became void when it was issued. If it should transpire that the property was overvalued on account of statements made by the plaintiff, and if the statements made by the plaintiff induced this company to issue a policy for more than the property was worth, if the property was overvalued to a large extent so as to induce the company to issue a policy upon it for any sum, then I say to you that would void the policy. You have heard the testimony in this case in regard to the manner in which this application was procured. You are the exclusive judges of the facts in this case, and, if you find from the testimony that this application was prepared by the person who solicited this insurance on behalf of the defendant company, and that the valuation was placed in the application by him, and if he was present at the property and saw and inspected it, then I say to you that the fact of the property being overvalued would not vitiate the policy or void the loss, or void the fact, if it exist, that the defendant would be liable for the loss in case of damage by fire."

Situated on the lot where the store building and appurtenances stood before the fire, there was another frame structure, not covered by the policy, called the "bank building," a portion of which respondent had always used as a wareroom for surplus goods which were taken therefrom and placed in the stock from time to time

as the capacity of the store would permit, and thus the shelves and all available space under the counters were kept constantly filled with merchandise. Though the question was not at issue, as the answer in no manner referred to the subject, counsel for appellant, on cross-examination of respondent, inquired whether he was not making a $600 mortgage to C. Gotzain & Co., about two weeks before the fire, and the answer was that the mortgage referred to did not cover the insured building, but the bank building and the lot, and on re-direct examination he was properly allowed to make the following explanation: "The facts were that, when I gave the mortgage upon the banking building, the understanding was, between him and me, that it was upon the banking building and the lot. I didn't suppose that it covered the store building." The records in the office of the register of deeds show that the mortgage was given on the lot upon which both buildings were situated, without exempting either of such buildings from its operation, and that the same had been fully satisfied and released before the trial. As the evidence of such incumbrance had some bearing upon the question of respondent's motive in the alleged incendiary destruction of his property, and was admissible under the pleadings for no other purpose, it was competent for him to testify to the effect that he did not intend to mortgage the store building, and the objection to the question that the same was "incompetent, irrelevant, and immaterial, and not redirect examination, and the mortgage is the best evidence of its contents," was very properly overruled. As appellant knew, constructively at least, that the mortgage had been executed and placed of record, it might have pleaded and proved its existence in support of its theory that the act constituted a breach of a condition of the policy, and, having failed to so allege and make the issue a substantive defense relied upon to defeat a recovery, it is in no position to complain of the instruction of the court with reference to that instrument. The fact that the giving of the mortgage was incidentally brought out, as bearing on the question of motive and intent, could not operate to change and enlarge the issues made by the pleadings. Home Ins. Co. v. Curtis, 32 Mich. 402.

In a case similar upon principle, where judgments against the

insured premises were of record, and no valid excuse for ignorance
of the fact was shown, it was held that an application made at the
trial to amend the answer of the company, so as to allege
the existence of such judgment liens and incumbrances, was prop-
erly denied.   Newman v. Springfield Fire Ins. Co., 17 Minn. 123
(Gil. 98).   The universally prevailing rule is that the breach of a
condition, representation, or warranty contained in an insurance
policy, if relied upon for a defense in an action on such policy,
must be specially pleaded in the answer, or it will be deemed
waived by the company and not an issue in  the case.   Bittinger v.
Providence Ins. Co., 24 Fed. 549; Copeland v. Western Assur.
Co., 43 S. C. 26, 20 S. E. 754; Cassacia v. Phoenix Ins. Co., 28
Cal. 629; Caplis v. American Fire Ins. Co., 60 Minn. 376, 62 N.
W. 440; Sutherland v. Standard Life & Acc. Ins. Co., 87 Iowa,
505, 54 N. W. 453; Tischler v. California Farmers' Ins. Co., 66
Cal. 178, 4 Pac. 1169; Chambers v. Northwestern Mutual Ins.
Co., 64 Minn. 495, 67 N. W. 367; Buxton v. Sargent, 7 N. D.
503, 75 N. W. 811.   Such defenses, when not pleaded, though
established by the evidence, should be ignored by the court in
submitting the issues to the jury.   American Cent. Ins. Co. v.
Murphy, 61 S. W. 956; Elmer v. Mutual Benefit Life Ass'n, 64
Hun. 639, 19 N. Y. Supp. 289; Greiss v. State Invest. & Ins. Co.,
98 Cal. 241, 33 Pac. 195; Gunther v. Liverpool & London & Globe
Ins. Co., 85 Fed. 846; Williams v. Mechanics' Ins. Co., 54 N. Y.
577.

As respondent had never inventoried his stock, and the books
of account and invoices received in the regular course of business
were destroyed by the fire, oral testimony was the best of which
the case was susceptible to prove their quality and value, which
was shown by his undisputed testimony, corroborated by several
competent witnesses, to be when destroyed practically the same
as specified in the application, to which no claim of excessive valu-
ation has been made.   After minutely describing the amount, char-
acter, quality, and location of the various kinds of merchandise
with which many years of daily contact had made respondent es-
pecially familiar, and which he had packed in to the store in every
conceivable way to economize space, he stated that the stock con-

sumed figured about $4,800 in value, and testified, without any objection, in part as follows: "From working in there and seeing them every day I had it in mind so thoroughly that I almost felt that I could go in there the darkest night that ever was and put my hand on anything that was in the store, without any light, if I wanted to. I believe I got so that I knew everything that was in the store, and where it was, so that I could almost have made an invoice of what was in the store without going to look at it and hardly make a mistake. After the fire I made some endeavor to refresh my memory as to the contents of that store, as to what was in there at the time of the fire. I took about ten days a short time after the fire, and sat right down where I was, all alone, with nobody around me, and went over it in my mind. I took it shelf by shelf, and went over it just as they were in the store. I know that I have pictured them out in my mind as near as I possibly could, what was in there. I left out some, but I made it just as near as I possibly could get at what was in there, because I had it in my mind to get it, because I wanted it for my own benefit. I made a list of what goods there were here as near as I could make out. I was able to recollect the greater part of the goods that were in the store." Such lists of property, made after its destruction by fire, may be used to refresh the memory of a witness, and he may give his opinion as to the value upon proof of such knowledge as respondent and those testifying in his behalf were shown to possess. Enos v. St. Paul Fire & Marine Ins. Co., 4 S. D. 639, 57 N. W. 919, 46 Am. St. Rep. 796; Graves v. Merchants' & Bankers' Ins. Co., 82 Iowa, 637, 49 N. W. 65, 31 Am. St. Rep. 507; Bedell v. Long Island Railroad Co., 44 N. Y. 367; Kahn v. Traders' Ins. Co., 4 Wyo. 419, 34 Pac. 1059; 7 Encyc. of Evidence, 564, and numerous cases cited in the notes. As fraud is never presumed, but must be proved, and the facts and circumstances disclosed by the record are in no manner inconsistent with respondent's innocence, the jury was justified in concluding that the building and contents were destroyed by fire without his fault, connivance, or procurement, and that the goods alleged to have been removed from the store a few days before the fire were of inconsiderable value and taken without any fraudulent intent.

The testimony shows that the wife of respondent was a milliner, and for the purpose of engaging in business removed to a new location in Wisconsin about a month before the fire, taking her household effects and personal belongings, together with certain miscellaneous supplies for herself and daughter which were selected from the stock of merchandise, and concerning which she testified as follows: "I had my husband's permission to do this. There were two or three pieces of apron gingham, about two yards and a half each, three or four dress patterns, calico, ten yards each; twenty yards of outing flannel; about ten yards of drapery for curtains; about fifty yards of different pieces of lace for trimming; about the same of embroideries; a few pieces of neck ribbons; and three or four waist patterns. I believe that was all. Those were packed in an Arbuckle coffee box. The largest box I packed was about three feet long, and perhaps the same width. It contained dishes and pillows. I packed three boxes with cooking utensils, tinware, and such things. The largest one was just about two feet, or perhaps two and a half. There were no other boxes that I took. After packing those boxes, I went to Prescott, Wis. I saw the boxes when they were unloaded from the car at Prescott. They were taken to my place of residence and business, where I unpacked them. They were the same boxes I had packed. They seemed to be in just the same condition as when I packed them. There were other things in the car beside the boxes. There was furniture and a large heating stove. There was some grain, some potatoes, a sack of sugar, six brooms, some stove pipe, a case of canned tomatoes, a little bag of spices, some gold dust, some sugar, soap, all packed in a box, a horse and a cow and a crate of chickens. There were four sacks of flour. There was not any bolt goods in any of those boxes."

In support of the claim of surprise and newly discovered evidence, several affidavits were produced at the hearing of the motion for a new trial; but certain of such affidavits go only to discredit the testimony of respondent concerning what appellant's agent said and did when the application for insurance was procured, while others relate to collateral issues brought out on the cross-examination of respondent with reference to the amount and value

of certain goods purchased to replenish the stock. None of the testimony thus offered, if conceded to be true, would directly tend to establish or disprove any issue within the pleadings, and it is not an abuse of discretion to deny a new trial on the ground of such newly discovered evidence or that which goes only to discredit or impeach a witness. "Except under unusual circumstances a new trial will not be granted on the ground of newly discovered evidence which goes only to discredit or impeach a witness." Schaffer v. Corson, 5 S. D. 233, 58 N. W. 555; Axiom Mining Co. v. White, 10 S. D. 198, 72 N. W. 462. In the early case of Gaines v. White, 1 S. D. 434, 47 N. W. 524, it is said: "An application for a new trial on the ground of surprise should be granted with great caution, for in many cases it is used as a pretext and a cover for carelessness and inattention, rather than as a meritorious ground for relief. Surprise may be often feigned or pretended, and the opposite party may not be able to show that such is the case. The party alleging surprise should be required to show it conclusively, and by the most satisfactory evidence within his reach." Instead of producing its agent who solicited and obtained the application for insurance upon which the policy was issued, appellant sought throughout the trial to question his authority to so act, and it has not been shown that his attendance at the trial could not have been secured by the exercise of reasonable diligence. So far as the question of a new trial related to newly discovered evidence, it was not an abuse of discretion to deny the motion. Wilson v. Seaman, 15 S. D. 103, 87 N. W. 577; State v. Coleman, 17 S. D. 594, 98 N. W. 175.

From a careful examination of every assignment of error urged in the brief of counsel for appellant, we are convinced that no prejudicial errors of law occurred at the trial, and that the evidence is amply sufficient to justify the judgment in favor of respondent, which is hereby affirmed.