ANDAL et al., Respondents, v. OSTHUS et al., Appellants

(52 N. W.2d 96)

(File No. 9258. Opinion filed February 26, 1952)

Rehearing denied March 25, 1952

**T. R. Johnson,** Sioux Falls, for Defendants and Appellants.

**J. D. Coon, Leroy Kadinger** and **Harold G. Bergdale,** all of Sioux Falls, for Plaintiffs and Respondents.

RUDOLPH, J.   Plaintiffs brought this action to have a contract for the sale of real property specifically performed. The trial court ordered defendants to perform and they have appealed.   We affirm the judgment.

Except for the testimony of the defendant, Emma Osthus, that she was coerced into signing the contract, the evidence is undisputed.   The trial court found that Emma and her co-defendant, Mable, signed the contract voluntarily. The evidence amply supports this finding, and disposes of any claimed coercion.

The land involved belonged to Ole Andal in his lifetime.   Ole died and left surviving him nine children, parties to this action.   Two sons were appointed administrators of the Andal estate.   The real estate owned by Ole consisted of two separate tracts of land, one farmed by a son, Melvin, the other by a son-in-law, Walter M. Sorensen.   After Ole's death the nine children had a meeting for the purpose of agreeing upon a disposition of the land.   The attorney for the administrators attended this meeting.   There was considerable discussion regarding the land and its value.   The two defendants, Emma and Mable, who are daughters of Ole, thought the land should be sold at public auction.   The seven other children were opposed to public sale, giving as their reason the fact that their father wished the land kept in the family. The seven thought that the land should be sold to the son and son-in-law who had long been tenants on the farms at $150 an acre.   Emma and Mable demurred, with the result that a written agreement was executed.   We set forth the agreement.

"Agreement

"1. Agreement made this 26th day of May, 1950, between Oscar Andal, Alfred Andal, Mrs. B. J. Osthus, Mrs. Martin Osthus, Roy Andal, Alma Andal, Joseph Andal, Melvin Andal, and Mrs. Walter M. Sorensen.

"2. Whereas, the parties hereto are the sole and only heirs at law of the deceased, Ole Andal.

"3. Whereas, the parties hereto desire by this family agreement to transfer by warranty deed the Southeast one-fourth (¼), Section twenty-six (26), township ninety-six (96), Range fifty-three (53), Daneville township, Turner County, South Dakota, to Melvin Andal of Wakonda, who is one of the heirs, for $150.00 per acre.

"4. Whereas, the parties hereto further agree to sell the Northwest one-fourth (¼), Section thirty (30), township ninety-seven (97), Range fifty-two (52) in Turner Township, Turner County, South Dakota, to Mr. Walter M. Sorensen, of Hooker, South Dakota, for $150.00 per acre.

"5. Now, therefore, in view of the above agreement, we, Oscar Andal, Alfred Andal, Roy Andal, Alma Andal, Joseph Andal, Melvin Andal and Mrs. Walter M. Sorensen do agree to each pay approximately $220.00, or a total amount of $1540, which is to be divided equally between Mrs. B. J. Osthus and Mrs. Martin Osthus. This payment made so as to preclude the necessity of having an auction sale which Mrs. B. J. Osthus and Mrs. Martin Osthus desired because their belief was that the land should be sold for $175.00 per acre. In the event the total acreage of the two farms is less or more the above figures may vary slightly. The amount represents the extra they would have received had each farm sold for $175.00 per acre less expenses.

"1. Oscar Andal
2. Alfred Andal
3. Mrs. B. J. Osthus
4. Mrs. Martin Osthus
5. Roy Andal
6. Miss Alma Andal
7. Joseph Andal
8. Melvin Andal
9. Mrs. Walter M. Sorensen"

Mrs. B. J. Osthus and Mrs. Martin Osthus referred to in the agreement are the defendants, Emma and Mable. Following the execution of the agreement the two parties named who were to purchase the land each paid $100 on the agreed purchase price, and are now in court as plaintiffs together with the other heirs of Ole, insisting that Emma and Mable convey their interests in the land to them.

After the execution of the agreement the land was surveyed and it was discovered that the acreage of each quarter section described in the contract was less than 160 acres. According to the survey the land to be sold to Melvin amounted to 143.2 acres, and that to be sold Walter Sorensen only 122.9 acres. The seven heirs, other than Mable and Emma, accepted this measurement, executed deeds and are willing to be paid on the basis disclosed by the survey. Emma and Mable have refused to execute deeds and accept payment on the basis of the survey.

It appears that the inventory in the Ole Andal estate proceedings set forth the land sold to Melvin as a full quarter section and the land sold to Walter Sorenson as a short quarter containing only 153 acres more or less. It was apparently on this basis that the amounts appearing in the contract to be paid by the seven heirs to Emma and Mable were determined.

The trial court held that the parties were bound by the survey, and that Emma and Mable should perform on that basis.

The appellants are here contending that they should be paid for their interest in the land, on the basis of one full quarter section, and the short quarter of 153 acres. They take the position that the contract did not contemplate a survey of the land, and that they are not bound by any survey made. Nowhere, in briefs or argument, do appellants contend that the acreage as shown by the survey was so much smaller than that used as a basis for the payments to them by the other heirs, set forth in the contract, that there was in reality no meeting of the minds of the parties upon any contract for an acreage as small as that shown by the survey. Whether such contention if made would have any merit we of course need not and do not decide. In any

event, the case was not tried or submitted either to the trial court or this court on that basis. In passing this issue we simply refer to the Annotation in 153 A.L.R. page 43, where it is stated: "Diligent search has disclosed no case where a contract fixing the purchase price at a specified rate per acre or other area unit has been rescinded either at the vendor's or the vendee's instance, on account of a mutual mistake, in that the land sold contained a smaller area than contemplated by the parties."

■ The trial court held that the contract contemplated that the land be surveyed and the exact acreage determined. We concur in this view. That the payments to be made were not definitely fixed by the contract is made clear by the use of the word "approximately" appearing before the amount of the payments. Referring to these payments the contract expressly states, "In the event the total acreage of the two farms is less or more the above figures may vary slightly." This language clearly indicates that the exact acreage and payments based thereon should be left for future determination. The survey was a proper means of accomplishing this purpose. This quoted language and the fact that a price was fixed at a certain price per acre, further indicates, very definitely we believe, that the sale was on an acre basis and not a sale in gross. The sale being on an acre basis, it was necessary to determine the exact acreage, and Mable and Emma were entitled to be paid at the agreed rate of $175 per acre on the exact acreage, no more and no less. Under such a contract the purchaser does not take the risk of any deficiency, and the vendor does not take the risk of any excess. Ernster v. Christianson, 24 S. D. 103, 123 N.W. 711; Bunkers v. Guernsey, 35 S. D. 574, 153 N.W. 378, reversed on other grounds, 38 S. D. 174, 160 N.W. 732; Id., 41 S. D. 381, 170 N.W. 632.

■ The court's finding as to the amount of acreage is based upon certain plats of the two farms which were offered and received in evidence. The plats bear the certificate and official seal of Ellis v. Nelson, a licensed surveyor, who certifies to the acreage in each tract. There was no other evidence bearing upon the quantity of land, and no attempt by appellants to attack the accuracy of the plats. Nor did

appellants attempt to show that the acreage of the tracts was in any respect other than as shown by the plats and the certificate of the surveyor. True, the appellants stated when the plats were offered that by not objecting to the admission of the plats in evidence they were not admitting their accuracy. But there was no objection to the plats and certificates being received in evidence and they were before the court for what they were worth without objection. The real question presented, therefore, is whether extrinsic evidence must be presented to establish the accuracy of the plats and the certificate of the surveyor before they have any probative value. Under the facts here presented we do not believe such evidence was necessary. By not objecting, appellants admitted that the plats were exactly what they purported to be, i. e., the results of surveys made by a licensed surveyor who certifies to the number of acres in each tract. The issue was the quantity of land. The certificate of the surveyor, being before the court, was direct evidence on this issue. Had objection been made these certificates and plats no doubt should have been excluded because no foundation was laid for their introduction, but by not objecting and agreeing that the plats and certificates should be received in evidence appellants waived the necessity of establishing the foundation and the evidence was before the court. By not admitting the accuracy of the plats appellants, no doubt, preserved their right to question the plats and the surveyor's certificate but this they did not do, and the issue was before the court without evidence other than the certificate of the surveyor and the plats. We are of the view that the trial court was fully justified in accepting this evidence as establishing the fact at least until evidence to the contrary was presented.

We have considered appellants' other assignments of error and find them without merit.

The judgment appealed from is affirmed.

All the Judges concur.