J. S. PERKINS, Plaintiff and Appellant, *v.* NETTIE M. STEPHENS and C. W. WRIGHT, Defendants and Respondents.

No. 9356.
Submitted February 26, 1957. Decided March 25, 1957.
308 Pac. (2d) 620.

Messrs. Collins & Burns, Dillon, for appellant.

Mr. Leonard A. Schulz, Dillon, for respondents.

Mr. John Collins and Mr. Schulz argued orally.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from a judgment entered upon an adverse verdict of a jury in an action for damages for malicious destruction of a fence situated on lands owned by the appellant.

The respondent, Nettie M. Stephens, purchased a triangular tract of land from Margret Williams on March 24, 1947. Prior to the purchase, Mrs. Williams indicated to her the boundaries of the tract and Mrs. Stephens went into possession. The northerly portion of the tract which Mrs. Stephens understood to be a part of her tract had an old fence in poor condition, and Mrs. Stephens secured posts and wire and hired a man to build the fence up, expending approximately $350 for that purpose. The fencing was completed about the 16th day of May, 1947, and thereafter she had Mrs. Williams view the completed fence. She then leased the tract of land to the Forest Service for a horse pasture.

On January 9, 1950, the appellant purchased approximately 160 acres of land from the estate of Margret Williams, who died in August of 1949, a portion of the east boundary of which lands formed the west boundary of the tract then in the possession of Mrs. Stephens.

Nearing the end of July, 1950, Mrs. Stephens discovered that the northerly portion of the triangular tract, consisting of approximately ten acres, was not included in her deed from Mrs. Williams and was being claimed by the appellant. She and ap-

pellant had a conversation in which she offered to purchase this northerly portion of the tract but no price was set or deal made. Mrs. Stephens further testified that at this same conversation she then offered to sell to the appellant the fence, but he claimed the fence also. Mrs. Stephens then came to Dillon and consulted her attorney and disclosed to him the facts in the matter; acting upon his advice she hired C. W. Wright, the other respondent, to take down the fence she had rebuilt on the northerly portion of the triangular tract of land in dispute. Wright secured the assistance of another man, and they had been working about three hours in taking down the fence on July 29, 1950, when their actions were halted by the appellant, who informed Wright that it was his property and that Wright was tearing down appellant's fence and that he should stop. Wright informed appellant that he had been hired to take it down by Mrs. Stephens, but the work in taking down the fence ceased.

The record discloses that at the north end of the triangular tract there was an irrigation ditch which is at or near the eastern edge of appellant's property. Appellant estimated that the fence had been taken down for a distance of five or six hundred feet beyond the ditch, which would be admittedly upon the appellant's property. Wright testified that he had taken down the fence three rods beyond the ditch or a matter of approximately fifty feet upon appellant's property.

Neither of the respondents removed any of the fencing materials. Some posts were old and broken off, but the balance were left lying on the ground, and the wire was merely laid on the ground. The appellant testified that he shortly rebuilt the fence and used the materials which had been previously in the fence.

While about ninety rods of fence were taken down, as estimated by the witnesses, practically all of this was upon the northerly portion of the triangular tract which Mrs. Stephens thought she had purchased and upon which she rebuilt the fence in 1947, and possession of which she had since the purchase until some time in July of 1950, when it was claimed and taken

by the appellant, but which tract was actually owned by other persons not involved in this action.

The cause was submitted to a jury which returned a verdict in favor of the respondents.

Cost bill was filed by the respondents. The appellant filed a motion to tax the costs, objecting to an item of $100 for the preparation of a map which was introduced in evidence by the respondents. The court held a hearing upon the motion, and evidence was offered by all parties. Thereafter the court overruled the objections and taxed the cost of preparation of the map.

Motion for a new trial was denied, and from the judgment this appeal was taken.

Error is claimed in permitting the respondent, Mrs. Stephens, to testify to certain conversations had with Mrs. Williams before the purchase of the land from her; the admission of a check given to Mrs. Williams for the purchase price; in permitting testimony by Mrs. Stephens in regard to contacting her lawyer and being advised by him; in refusing to give to the jury two proposed instructions; in taxing the cost of the map; and, in general, that the evidence is insufficient to sustain the verdict.

Taking up the matter of the testimony as to conversations between Mrs. Stephens and Mrs. Williams, the court instructed the jury:

"Evidence has been admitted here respecting certain negotiations between Mrs. Williams, a former owner of the lands in question and the defendant, Nettie M. Stephens. You are instructed that such evidence was admitted only to aid you in determining whether or not the defendant Stephens acted maliciously in having the fence in question torn down; but it may not be used by you to determine whether the plaintiff is entitled to actual damages."

There can be little question that in a cause involving exemplary damages the innocence or guilt of a party charged with performing the malicious act is an issue, because as stated in 15 Am. Jur., Damages, section 283, at page 725:

"For an analogous reason exemplary damages can never be allowed against the innocent, and are never appropriate where the injury has proceeded from misfortune rather than from any blamable act. It is therefore apparent that the intention had the motives with which the act was done are always material and should be inquired into. It follows, further, that exemplary damages are not authorized where a tort is committed unintentionally, through mistake, or ignorance, or under duress.''

Appellant and respondent both received title to their land from the same source, though appellant purchased his land from the estate of Margret Williams.

At the time of the conversation Mrs. Williams was the owner of the land and she and Mrs. Stephens were on the land to have the boundaries pointed out by Mrs. Williams. As stated in 31 C.J.S., Evidence, section 249, page 1002:

"* * * declarations of a deceased owner or tenant, in ▉ possession of lands and on the premises, made while in the act of pointing out his own boundaries, and their marks, are competent evidence, not only of declarant's claim as to the extent of his possession, but of the fact that the boundaries and landmarks are as stated, provided there is no interest to misrepresent, and provided further declarant had adequate means of knowledge.''

From the record it appears the declarant was dead at the time ▉ of the trial, she would have had no purpose to misrepresent the boundaries, and being the owner should have had knowledge of the boundary about which she was speaking.

The court limited admission of the evidence to the question of malice and we see no error in the holding of the court.

With respect to admission of the check given in payment for ▉ the land, the purpose being to rebut testimony of appellant as to the value of the land as stated by counsel at the time of the offer, we see no prejudice in its reception.

With regard to the admission of the testimony of Mrs. Stephens in regard to contacting her lawyer and being advised by him, it has long been the law in this jurisdiction that

advice of counsel, if in good faith, is proper for the consideration of the jury in connection with the question of exemplary damages. Bohm v. Dumphy, 1 Mont. 333.

As to the two tendered instructions which were refused by the court, we have examined them and fail to find any error in such refusal. The jury was correctly instructed as to the law of the case, and the applicable portions of the offered instructions were covered by other instructions given.

With regard to the taxing of the cost of the map in the tax bill, appellant contends that under the case of Montana Ore Purchasing Co. v. Boston & Montana Consolidated Copper & Silver Mining Co., 27 Mont. 288, 70 Pac. 1114, the expense of the survey work necessary for the preparation of the map cannot be considered as costs. A reading of the opinion will disclose that the surveys referred to were not for the purpose of preparation of a map since counsel therein attempted to have the court accept the preparation of models as maps, which the court declined to do. No contention was therein made that the surveys there, in question, were used for the purpose of preparation of maps, and therefore such case is not decisive of the matters here in issue.

This court stated in King v. Allen, 29 Mont. 5, 10, 73 Pac. 1107, 1109, that:

"Whether or not the expense of making the map was reasonable or necessary in order to facilitate the hearing upon the injunction proceeding was a question of fact and upon the theory upon which the matter was presented to the court by the defendants, the court should have admitted all competent evidence tending to throw light upon this question. This would include the evidence of witnesses explanatory of what the map was intended to show, as well as their statements as to whether it correctly represented the facts intended to be shown by it. In connection with this it was clearly competent to introduce the map itself, and also the testimony of witnesses tending to show what was the reasonable cost of making it."

In Kelly v. City of Butte, 44 Mont. 115, 119 Pac. 171, 174,

practically a similar situation to that presented here was involved, and this court stated:

"Plaintiff filed his duly verified memorandum of costs and disbursements, in which the following item appears: 'Frank Donahoe, for reasonable expense for making a map required and necessary to be used on trial of cause, $20'. Thereafter defendant filed a motion to tax the costs and reduce this item to $5. This motion was supported by the following affidavit: 'R. R. Vail, being first duly sworn, deposes and says: That he is and has been a civil and mining engineer for the past fifteen years that as such he is familiar with and knows the reasonable cost and expense of making and preparing maps; that he saw the map offered by the plaintiff and introduced in evidence on the trial of the above-entitled action; that the reasonable cost of making said map offered in evidence by the plaintiff and used upon the trial of the case was not more than five (5) dollars. Deponent further says that this does not include any examination that said Frank Donahoe may have made of the premises in question and does not include any survey that the said Donahoe may have made nor the collection of any data, but simply the reasonable expense for making the said map. R. R. Vail'.

"The court refused to reduce the amount. We find no error in this action of the court. The reasonable expenses for making a map, if required or necessary to be used, are properly taxable by virtue of section 7169, Revised Codes [1907, now R.C.M. 1947, section 93-8618]. The question of fact raised by the affidavit just quoted was for the district court to decide. The original memorandum, verified as it was, was *prima facie* evidence that the amounts named therein were necessarily expended. The burden of overcoming such showing was on the defendant. The district court found that the burden had not been sustained, and we are not disposed to interfere with the finding. See Isman v. Altenbrand, 42 Mont. 188, 111 Pac. 849; Brande v. A. L. Babcock Hardware Co., 35 Mont. 256, 88 Pac.

949, 119 Am. Rep. 858; and King v. Allen, 29 Mont. 5, 73 Pac. 1107.''

The sole question involved is the ''reasonable expenses for making a map or maps if required, and necessary to be used on trial or hearing'' as provided by R.C.M. 1947, section 93-8618. There is no contention by the appellant that the map was not necessary—it was introduced in evidence by the respondent and much testimony was adduced with reference thereto.

Certainly the preparation of a map requires more than the mere drafting upon the paper; some prior investigation of the locality to be portrayed must be had, measurements taken, persons employed, transported, fed and housed to accomplish this purpose. At the time of the hearing on the motion, witnesses were called and testified to the ''reasonable expenses'' for making the map and it was incumbent upon the appellant to overcome the *prima facie* evidence that the amount named in the cost bill was necessarily expended. After hearing the evidence of both parties upon this issue, the court found that the appellant failed to sustain such burden and we see no abuse of discretion in its ruling.

As to the specification of error that the evidence is insufficient to justify the verdict: From the record it appears that Mrs. Stephens had possession of the disputed tract from the time of her purchase of the adjoining land from Mrs. Williams in 1947 until the month of July, 1950; that while in possession she had expended approximately $350 to repair and rebuild the fence upon it. Appellant in his complaint claimed damage only to fence upon the land owned by him, which, so far as the part on which the fence was taken down was concerned, would be that portion in the vicinity of and north of the irrigation ditch. Appellant claimed this would be five or six hundred feet. Accepting his own value of $3 per rod, if the entire amount of fence claimed by him had been completely destroyed his damage would have been between $90 and $108. Respondent's testimony was to the effect that only three rods of fence were taken down be-

yond the irrigation ditch. Again using appellant's own value of $3 per rod, if respondent's measurements were correct, his damage would have been $9.

The undisputed testimony of Mrs. Stephens was that she spent approximately $350 in materials and labor rebuilding the fence, and all materials usable were taken and used by the appellant when he put the fence back up and Mrs. Stephens received no part of them, nor has she made any claim to them.

From the evidence it is also apparent that Mrs. Stephens rebuilt and repaired this fence under the mistaken belief that it existed upon land owned by her.

We cannot say that the evidence is insufficient to support the verdict, on the contrary it would appear that the evidence fully justifies the verdict returned by the jury.

The judgment is affirmed.

MR. JUSTICE CASTLES, BOTTOMLY, ANGSTMAN and ADAIR, concur.