STENE, Respondent v. HILLGREN, Appellant

(98 N.W.2d 156)

(File No. 9752. Opinion filed September 3, 1959)

**James O. Berdahl,** Sioux Falls, for Defendant and Appellant.

**Gene E. Pruitt,** Sioux Falls, for Plaintiff and Respondent.

HANSON, P. J.  Plaintiff seeks both compensatory and punitive damages in this action for an alleged malicious assault and battery. The action has been twice tried to a jury and is here for the second time on appeal. On the first trial the jury awarded plaintiff a verdict in the amount of $938. This verdict was vacated by the trial court and a new trial granted upon the ground of excessive damages appearing to have been given under the influence of passion or prejudice. We affirmed on appeal by plaintiff. See Stene v. Hillgren, 77 S.D. 165, 88 N.W.2d 109. A second trial followed in which the jury awarded plaintiff a verdict for compensatory damages in the amount of $50 and punitive damages in the amount of $750. Defendant moved for a new trial alleging, (1) misconduct of the jury in arriving at a quotient verdict, and (2) an excessive verdict, particularly as to punitive damages, appearing to have been given under the influence of passion or prejudice. The motion for a new trial was denied and defendant appeals from that order and from the judgment.

█  Viewing the evidence in the light most favorable to the plaintiff, as we are obligated to do, it appears the assault took place at a New Year's Eve party held in the Nordic Hall at Sioux Falls. The Nordic Hall is a one-story building with a full basement owned by an association or corporation. It was erected for cultural purposes as a memo-

rial to pioneers of Scandinavian ancestry. The defendant, Ralph O. Hillgren, was employed as part-time manager and custodian. His duties primarily concerned the basement which contained meeting rooms, a banquet hall, and kitchen. The main floor was leased for business offices.

Before Hillgren became manager of the Nordic Hall the Norse Glee Club had been given exclusive use of the basement on Monday evenings for their rehearsals, meetings, and social gatherings. The plaintiff, E. O. Stene, was a member of this singing group and, as such was given a key to the building.

In 1955 the Norse Glee Club leased the Hall to Mr. McCroskey, owner of a nearby bar, for a private party. In November 1956 the Glee Club again authorized McCroskey to use the Hall for a New Year's party on Monday evening December 31, 1956.

Mr. Hillgren learned of the McCroskey party the afternoon of December 31st. He immediately contacted the President and the Secretary-Treasurer of the Nordic Hall Association. Both officers advised him, in effect, to let the party go on and not to worry about it. Instead, Hillgren went to the police station about 6:00 o'clock in the afternoon and sought aid. The police refused to help.

About 8:30 in the evening plaintiff and the President of the Glee Club opened the Hall for McCroskey. Hillgren was standing inside the front door when they arrived. Nothing was said between plaintiff and Hillgren at the time. After letting McCroskey's helpers into the building plaintiff, his wife, and some friends went to Giovanni's Restaurant for dinner. They returned to the Nordic Hall about 12:30 to join McCroskey's party as invited guests. Dancing was in progress and beer, coffee, and doughnuts were being served. Some guests were partaking of their own more potent liquid refreshments. Like them, plaintiff had a pint of whiskey for the use of himself and his friends. During the course of the evening plaintiff consumed about a forth of the pint.

In the meantime Mr. Hillgren was in and out of the Hall several times. He called the police department again at 9 o'clock and was informed he would have to do his own

policing. He looked in at the party around midnight. At 2:40 he returned and advised McCroskey it was time to close up. McCroskey said he was Stene's guest and wouldn't leave until he left. Stene told Hillgren "the fun is just beginning." Hillgren then called the police and Lt. Merl Renli responded.

After looking over the party the police officer held a conference with Hillgren and Stene in the kitchen. The officer told them "it was a private place, probably a private party and I didn't think I had jurisdiction to close it up." He further testified: "Well, this went on for quite sometime all about the same story as one said, they had a right to be there, one said the other didn't have a right to be there and finally Mr. Hillgren says, well, I am manager here and I am asking you to leave and he grabbed ahold of Stene's arm and pulled on him and Stene pulled back to jerk loose from him and they both fell down." According to the police officer Stene might have been slightly under the influence of liquor but he would not consider him drunk. In his opinion Mr. Hillgren was not attempting to steady Stene on his feet when he grabbed hold of him but was attempting to eject him from the place.

Plaintiff's version of the incident was as follows:

"Q. What was said and done at that time and place? A. Mr. Hillgren thought that the hall should be cleared, that we had no right there and the policeman told him he couldn't see anything wrong with what was going on, that it was a private party and he had no business to stop the party and that it was just back and forth on the same subject.

"Q. Now, did Mr. Hillgren appear to be angry or excited or agitated? A. No, I didn't think he was angry right at the time we were talking.

"Q. Then what happened? A. Well, we were standing there and all of sudden he just made a lunge at me and down we went.

"Q. What was said by Mr. Hillgren or by you just before he made the lunge at you? A. Well, I believe that happened right after the policeman

had told him that he seen no reason to stop the party.

"Q. You were not engaged in a heated discussion with Mr. Hillgren at the time? A. No.

"Q. Were you prepared for the lunge? A. No.

"Q. What happened to you? A. When I fell I hit the corner of that slop sink and cut my head open."

Plaintiff received a small cut on the left side of his face which quickly healed. He doctored the cut himself. The blood washed out of his clothing. He lost no time from work and sustained no other damage or expense as a result of his injury.

█ Defendant contends a new trial should be granted under SDC 33.1605(2) because of misconduct of the jury in rendering a quotient verdict. Supporting this contention is the affidavit of the juror, Lawrence C. Clark. According to Clark "several ballots were taken on the question of punitive damages on which there was a wide divergence in figures. That thereupon it was agreed that each should put down the amount to which he or she considered the plaintiff entitled. That the twelve sums were then added together and divided by 12, which result was decided by the Jury as the amount of such damages; and that it was understood and agreed by each Juror before the said amounts were set down as aforesaid, that the 1/12th of the total would be the amount of damages; and he thereby was induced to agree to said verdict." In opposition is the affidavit of another juror, Mary K. Beasom, filed by plaintiff. In her affidavit Mary K. Beasom denies it was understood and agreed by each juror that 1/12th of the total figure set down would be the amount of damages to be awarded and that no juror was induced to agree to the verdict; that one juror did add up the total of twelve figures and divided by twelve but it was done solely by the juror for his information and there was no agreement the figure arrived at would be the verdict of the jury; after having ascertained the average figure the

jurors again deliberated and discussed the matter; several times voted on other figures; and finally agreed on the verdict as rendered.

The opposing jurors' affidavits present a disputed issue of fact involving the credibility of the two affiants. The trial court resolved the dispute in favor of plaintiff and in favor of the verdict rendered by the jury. We agree with the ruling of the trial court. Knutsen v. Dilger, 62 S.D. 474, 253 N.W. 459.

■ Plaintiff was not a trespasser in the Nordic Hall and did not become one during the course of the evening in question. He had a key to the building and was rightfully on the premises either as a member of the Norse Glee Club or as a guest of McCroskey. Defendant's claimed errors in this regard are therefore without merit and warrant no further discussion.

■ Defendant also contends a new trial should be granted because of excessive exemplary damages appearing to have been given under the influence of passion or prejudice. Primarily the amount of such damages is left to the broad discretion of the jury. As stated in the case of Bogue v. Gunderson, 30 S.D. 1, 137 N.W. 595, 596, "Great latitude is allowed in this class of cases. One purpose of exemplary damages is to deter the person against whom they are awarded from repeating the offense and others from committing it. An amount sufficient to serve this purpose in one instance might be wholly inadequate in another. Each action must be governed by its own peculiar facts. The social standing of the parties, the place where the assault occurs, the character of the persons present, the provocation, if any—all the circumstances—are to be considered. The question is not whether the trial court or this court, as triers of fact, would have awarded a less amount. Unless the verdict is so large as to clearly indicate that it must have been given under the influence of passion or prejudice, it should stand."

■ The discretion of the jury, however, is not "an arbitrary or unlimited one. They are not at liberty to award by way of punitive damages any amount regardless of how

large it may be. Their verdict in this regard is subject to supervision and revision by the court to the same extent that an award of compensatory damages is" 15 Am.Jur. Damages, § 295, p. 737. We believe the facts in this case demand revision and reduction by the court. The facts will not support an allowance of punitive damages, for the sake of example and by way of punishing the defendant, in an amount fifteen times greater than the amount of actual damages. It was pointed out in the recent case of Baumgartner's Electric Const. Co. v. DeVries., 77 S.D. 273, 91 N.W. 2d 663, 674, that "The amount allowed as compensation furnishes some measure of the enormity of the wrong of the defendant."

In attempting to eject plaintiff from the Nordic Hall the defendant may have acted arbitrarily, and officiously, but there is slight evidence he acted with malice and there are few facts from which this essential element may be inferred. Exemplary, punitive, or vindictive damages may be allowed by a jury in tort actions only "where the defendant has been guilty of * * * malice, actual or presumed * * * for the sake of example, and by way of punishing the defendant." SDC 37.1902. This is not the usual case where one person without justification or provocation violently strikes another a powerful or forceful blow—knowing and intending thereby to injure. "That in such circumstances a defendant is liable for both actual and exemplary damage is not open to debate" (Kunz v. Johnson, 74 S.D. 577, 57 N.W.2d 116, 120) and malice may be inferred in those cases from the nature of the assault itself.

The plaintiff is considerably younger, taller, and 90 pounds heavier than defendant. He is a building contractor whereas the defendant is a college instructor. The assault was not made in anger and there is no evidence defendant intended to injure plaintiff. The injury resulted when plaintiff slipped and fell—a totally unforeseen result of the original assault. It was an unfortunate incident, but hardly one to be characterized as an aggravated assault. On the first appeal of this case we were satisfied, from the record, that a new trial should be granted because of excessive

damages appearing to have been given under the influence of passion or prejudice. See Stene v. Hillgren, 77 S.D. 165, 88 N.W.2d 109. We believe the same prejudicial factors are evident in the present record. Consistent therewith and because of the meager evidence of malice we believe the punitive damages are excessive and should be reduced to the sum of $250—an amount amply adequate, under all the facts and circumstances, to punish defendant and to deter others from mitting a similar assault.

It will, therefore, be the order of this court that, if within 30 days from the date of this opinion, the plaintiff shall file in this court a written election to accept judgment in the sum of $300 together with interest thereon from date of judgment of the trial court and costs below, then the judgment of the trial court, as modified by the election of the plaintiff will be affirmed and no costs shall be taxed in this court. Otherwise, the order denying a new trial and the judgment shall be reversed with costs on appeal to appellant.

All the Judges concur.