GRAHAM, Respondent v. ARALL, INC., Appellant

(117 N.W.2d 491)

(File No. 9955. Opinion filed October 29, 1962)

**Gene E. Pruitt, Willy, Pruitt & Matthews,** Sioux Falls, for Defendant and Appellant.

**Charles Lacey,** Sioux Falls, **Francis L. Burns,** Sioux Falls, **H. F. Ricketts,** Mitchell, for Plaintiff and Respondent.

BIEGELMEIER, J. Plaintiff, an experienced pipe welder, recovered a verdict for injuries received while working on a gas distribution system being installed by defendant pipe-line contractor. As the relationship of the parties is that of independent contractors, defendant's duty as to plaintiff is first to be examined.

■ A contractor owes the same duty to care for the safety of his subcontractor as for his own employee. This follows from Polluck v. Minneapolis & St. L. R. Co., 45 S.D. 210, 186 N.W. 830, where this duty was said to be owing to the subcontractor's employee. The standard is ordinary or reasonable care commensurate with the nature of the operation or business involved. Coin v. John H. Talge Lounge Co., 222 Mo. 488, 121 S.W. 1, 25 L.R.A.,N.S., 1179, 17 Ann. Cas. 888; 35 Am.Jur., Master and Servant, § 123. The court has applied that standard as to negligent furnishing of an improper tool, Solleim v. Norbeck & Nicholson Co., 34 S.D. 79, 147 N.W. 266; for failure to furnish a reasonably safe place to work, Voet v. Lampert Lumber Co., 70 S.D. 142, 15 N.W.2d 579, and failure to provide a sufficient number of workers to raise a wall, Schmeling v. Jorgensen, 77 S.D. 8, 84 N.W.2d 558.

■ In effect the court submitted the issues to the jury on that theory. By instruction 4 the jury was advised defendant was answerable to an independent contractor for his own negligence and that of his agents acting within the scope of their employment. Defendant excepted that it unduly emphasized his responsibility, unnecessary as being given elsewhere and an incorrect statement of the law. By SDC 1960 Supp. 33.1318 an objection that an instruction does not state the law is insufficient. Baumgartner's Electric Const. Co. v. De Vries, 77 S.D. 273, 91 N.W.2d 663. Defendant did not indicate to the trial court and has not pointed out to this court wherein it or its content had been "already given" as claimed; nor does it so appear. Defendant also fails to show how the instruction unduly emphasized defendant's

responsibility. If defendant believed additional instruction should have been given on any issue to modify or qualify any instruc-tion, it should have been requested; none was presented. The objections stated were insufficient under the record and of no effect to challenge the instruction. It conformed to and did state the law applicable. Instructions 5 and 8 defining negligence and liability therefor were not excepted to by defendant and became the law of the case. SDC 1960 Supp. 33.1318 and 33.1601; Keller v. Merkel, 73 S.D. 477, 44 N.W.2d 208. However, this court has held a motion for a directed verdict and for judgment n. o. v. are to be reviewed by true principles of law rather than the law of the case as established by the instructions. Barnhart v. Ahlers, 79 S.D. 186, 110 N.W.2d 125 and Federal Land Bank of Omaha v. Houck, 68 S.D. 449, 4 N.W.2d 213. Some of the evidence on the issues claimed to be insufficient to support the verdict will be noted.

The forty-foot pipe sections are strung out and rest on 4 x 4 wooden skids laid across the ditch where the pipe is to be buried after it is welded. The ditches are 7 to 8 inches wide. On the morning of the injury, plaintiff walked west from a tie-in weld he had completed to the next weld where another welded section ex-tended on farther west. He attached his pipe clamp to the pipe section west of him. The clamp is a cylindrical device open on the sides so spot welds could be made through it. Plaintiff then testified:

"Q. That's on the section you were going to con-nect up? A. Yes. And then I got the two ends lined up. I was about to slip the clamp on the pipe next to me when the skids threw the pipe against my leg. * * * I stepped up to the pipe with my leg against it to steady it, and I got this clamp on to the pipe to the west of me, and I was about to slip it over the pipe next to me when it gave and it hit me here on the leg. * * * I turned around and looked to see what had happened, and I saw these skids standing in a vertical position with the pipe wedged up against them. * * * there's about two foot of skid sticking up in the air, and I suppose probably a foot sticking down below the surface of the ground. * * * the pipe * * * was

wedged up tight against the north side of the ditch * * * the end of the pipe * * * was probably a foot out of alignment * * *."

Plaintiff's evidence further revealed the welder had nothing to do with placing the skids and it was the custom and practice for the contractor to lay the skids and pipe, if the skids are not put in properly, that creates a more dangerous situation and a skid had never given way before.

Ray Kuntz, owner of nearly all the stock of defendant corporation, who was also a welder, testified his company digs the trench, strings out and prepares the pipe for the welder; that it is the custom for contractors to set the skids and the general practice for his company to place them under the pipe and it was responsible for their spacing; that he ordered forty-inch skids and a three-foot skid would be the minimum in length that could be safely tolerated and adequate "if it were properly placed." Defendant concedes its duty and responsibility to properly place the skids but contends there was no evidence it did not perform that duty.

■ The evidence showed when the pipe fell, twelve inches of the skids were wedged against the side of the trench and twenty-four inches sticking up out of the ground. The jury could reasonably infer that as the trench was seven inches wide the skids were placed with only five inches resting on the ground on one side of the trench and twenty-four on the other; that this was insufficient to bear the weight of the pipe because inadequate or improperly placed. The evidence is sufficient to support the claim of negligence and the verdict without reference to the res ipsa loquitur doctrine mentioned in the record. See Barger v. Chelpon, 60 S.D. 66, 243 N.W. 97; Hansen v. Isaak, 70 S.D. 529, 19 N.W.2d 521 and Bakken v. State, 60 N.D. 344, 234 N.W. 513. This disposes of the motions for judgment n. o. v. or a new trial under the test announced in Meylink v. Minnehaha Co-op. Oil Co., 67 S.D. 187, 291 N.W. 572.

■ Plaintiff's Exhibit 2 was a drawing to scale showing the customary manner of placing skids across the trench and under the pipe. Exhibit 3 depicted their location after the pipe fell. Defendant objected to Exhibit 2 and claims error in the court's

ruling. It was properly admitted in evidence. State v. Belt, 79 S.D. 324, 111 N.W.2d 588.

■ Defendant contends the verdict of $23,824 is excessive. There was evidence plaintiff earned $380 a week as a pipe-line welder; he was disabled for the balance of the season's work which lasted 18 weeks to the end of October 1958. During that time he consulted an orthopedic surgeon who operated on him for an avulsion of the left tibial collateral ligament. This was repaired and a torn semi-lunar cartilage was removed. Plaintiff later took therapeutic treatments at a hospital for about six months; he wore casts and a gelatin boot to reduce swelling; his recovery was and will be incomplete; the knee remains unstable; he has 95 degrees of flexion or bending as compared with 135 degrees of the opposite knee and a partial permanent disability rating, as his doctor described it, of 50 per cent of amputation at the knee. Plaintiff testified he could not do pipe welding after the accident as he did before—he required another helper to turn the pipe in the one job he tried and had not done any pipe-line welding since. His welding now is limited to work that pays him $150 a week as compared to pay of $300 to $380 on pipe-line work. The medical expense was $604.41 and loss of earnings during the 18 weeks of the 1958 season he was unable to work was around $6,000. The trial judge in considering the claim of excessive damages on the motion for a new trial was of the opinion it was reasonable; no showing has been made for overturning the verdict for this reason or other asserted errors. Piper v. Barber Transportation Co., 79 S.D. 353, 112 N.W.2d 329.

Affirmed.

All the Judges concur.