HANNAHS, Respondent v. NOAH, Executrix, Appellant

(158 N.W.2d 678)

(File No. 10395. Opinion filed May 13, 1968)

**Herman & Wernke,** Gregory, for defendant and appellant.

**Johnson & Johnson,** Gregory, and **John J. Simpson,** Winner, for plaintiff and respondent.

HOMEYER, Judge.

Defendant, E. B. Noah, appealed from a judgment entered upon a jury verdict awarding plaintiff $1500 for actual damages and $2000 as exemplary damages for wrongfully and maliciously interfering with his farm auction sale. While the appeal was pending, appellant E. B. Noah died and Bertha H. Noah, as executrix of his estate, was substituted as defendant and appellant.

In summarizing the evidence we view it in a light most favorable to the appellee and give him the benefit of all reasonable inferences therefrom and assume as we must that all conflicts in the testimony have been resolved in his favor by the jury.

E. B. Noah was the owner of an improved farm consisting of 320 acres in Tripp County, some of which is irrigated, and about 500 acres of pasture in Lyman County. He also leased about 134 acres from the Corps of Engineers which was used with the farm. On October 1, 1964, appellee, Delbert Hannahs, and Noah entered into a written lease of the farm from March 1, 1965, to March 1, 1968, on a cash rent and crop share basis and Hannahs took possession on February 26, 1965. There was about 36 ton of hay on the farm which Hannahs bought for $12 per ton when the lease was executed. Hannahs had an FHA loan and the parties contemplated an increase in the loan to pay for the hay, cash rent and other operating costs and expenses. The FHA office at Winner refused the increase because the cash rent was too high so the parties executed a second lease in February 1965 at a reduced rental and some other changes which was prepared by the FHA supervisor. It was expected that the second lease would be approved and the additional loan granted.

Noah spent the 1964-1965 winter in Arizona and on April 6th he telephoned Hannahs and told him the FHA supervisor had

advised the increase in loan would not be made that year, but he should continue with the farm work and a new deal could be worked out. Noah returned from Arizona about April 18th and it was agreed Hannahs would remain on the farm and work for monthly wages of $300 plus the use of the farm buildings and pasture for his cattle and hogs in return for the use of Hannahs' farm equipment. Noah was obligated to keep the equipment in repair. Hannahs was also to bale some hay for Noah on a one-half share basis.

On May 1st Noah paid $25 and withheld other sums due to apply on the hay sold and rent claimed to be owed. Hannahs refused to continue to work for Noah and made arrangements for a farm auction sale of his livestock and farm equipment to be held on May 17th. About a week before the sale Noah tried to induce Hannahs to resume work with threats to have the sheriff out, place a lien on the property, and stop the sale if he would not return to work for him.

On the morning of the sale Noah went to a lawyer's office at Winner and a Notice of Agister's Lien[1] was prepared and served upon Hannahs, the clerk of the sale, and the auctioneer by a deputy sheriff at about 1 p. m. when the sale was scheduled to start. The clerk and auctioneer refused to continue with the sale and the clerk made several telephone calls to his superior in the bank at Gregory and others. Following these calls, the clerk wrote on the notice "I, E. B. Noah, agree to release the above described livestock from premises providing all proceeds are held by Northwestern National Bank until above lien is satisfied. May 17, 1965". This statement was signed by Noah.

Hannahs testified the sale was delayed approximately two hours; that there were a lot of people and a good crowd at the

---

1. Notice of Agister's Lien: "Notice is hereby given that E. B. Noah hereby claims under the provisions of SDC 39.1001, an Agisters Lien upon the livestock owned by one Delbert Hannahs, consisting of the following: (lists cattle) You are further notified that the above E. B. Noah claims the said Agisters Lien for the above domesticated livestock since the same were entrusted by their owner Delbert Hannahs for the purpose of feeding, pasturing or ranging the same. You are further notified that the amount of the Lien claimed upon the said cattle is the sum of Five Hundred Nine & 45/100 ($509.45) Dollars, and that the said E. B. Noah by law is entitled to retain possession of all of the said domesticated animals until this amount is paid, and that any person involved in removing the same might be subject to damages by reason of conversion of said animals, and that the said E. B. Noah does hereby claim and hold the said livestock pursuant to the statute above cited." It was signed by the attorney.

sale when the papers were served; that the yard was full of cars and they extended onto the road both ways from the mail box; that when things were straightened out so the sale could proceed, there were no longer cars on the road and some had departed from the yard.

Appellant's primary contention is that the evidence is insufficient to justify an award of damages, either actual or exemplary. We will first consider the matter of actual damages.

■■ To entitle him to an agister's lien under SDC 39.10 a prerequisite was that Hannahs entrusted his livestock to Noah "for the purpose of feeding, herding, pasturing, or ranging" and he could then retain possession of such livestock until the amount due is paid. The evidence is clear that the amount claimed to be due as the foundation for the lien represented a debt for hay sold to Hannahs when the first lease was executed and possibly a small amount claimed to be owed as the reasonable rental value for use of the pasture before the livestock was to be sold. There was no evidence to support an agister's lien. The court correctly instructed the jury that Noah was not entitled to an agister's lien as a matter of law.

At the close of the evidence Noah moved for a directed verdict on the ground that Hannahs had failed to sustain the burden of proving actual damages. Except for an admission by the auctioneer who was a witness for Noah, that he told Hannahs' lawyer he felt the sale was $1500 short, the only other evidence of value and actual damages was by Hannahs himself. He testified concerning several specific items sold, to their costs, and condition, and prices expected, and then gave his opinion that the actual value of the property sold was $8,000 and that it brought $6,200.[2] No objection was interposed to this testimony.

■■ The owner of property either real or personal is qualified to express his opinion of the value of the property by

---

2. The clerk of the sale appearing as a witness for defendant testified the gross sale proceeds totaled $6,751.05 of which $305.00 represented property sold for neighbors. Gross sale price of plaintiff's property would have been $6,446.05.

reason of his status as owner. Enos v. St. Paul Fire & Marine Ins. Co., 4 S.D. 639, 57 N.W. 919; Smith v. Mutual Cash Guaranty Fire Ins. Co., 21 S.D. 433, 113 N.W. 94; Moulton v. Globe Mutual Ins. Co., 36 S.D. 339, 154 N.W. 830; State Highway Commission v. Olson, 81 S.D. 401, 136 N.W.2d 233; Smith v. Riedinger, N.D., 95 N.W.2d 65; III Wigmore on Evidence, 3rd Ed., § 716; Annot., 37 A.L.R.2d 967. The weight to be accorded such testimony is for the jury. Bolte & Jensen v. Equitable Fire Assn., 23 S.D. 240, 121 N.W. 773. The owner of chattels by reason of that relationship is a competent witness and qualified to give his estimate of their value. McGuire v. Thompson, 152 Neb. 28, 40 N.W.2d 237. Such estimates may be given either item by item or in gross amounts. Chicago & Erie Railroad Co. v. Ohio City Lumber Co., 6 Cir., 214 F. 751; Baltimore American Ins. Co. of New York v. Pecos Mercantile Co., 10 Cir., 122 F.2d 143; Borden v. General Ins. Co. of America, 157 Neb. 98, 59 N.W.2d 141.

■ Appellant did not object to the testimony of value which is the foundation for Hannahs' claim of damages. As we have stated, we believe the testimony of Hannahs of value was competent. Nevertheless, the general rule is that incompetent evidence if admitted without objection has probative value and may be considered with the same force and effect as proper evidence. Killian v. Hubbard, 69 S.D. 289, 9 N.W.2d 700, 146 A.L.R. 708; Balcom v. O'Brien, 13 S.D. 425, 83 N.W. 562; Belle Fourche Valley Ry. Co. v. Belle Fourche Land & Cattle Co., 28 S.D. 289, 133 N.W. 261; Andal v. Osthus, 74 S.D. 294, 52 N.W.2d 96. It has been held to be sufficient to establish a fact, support a finding or sustain a judgment. 30 Am.Jur.2d, Evidence, § 1089 and cases there cited. See also 88 C.J.S. Trial § 155.

In an annotation pertaining to the consideration of such evidence on motion for directed verdict, 120 A.L.R. 205, 213, the prevailing rule is stated: "Most of the cases bearing on the point agree that objectionable conclusion or opinion evidence received without objection should, or at least without error may, be given consideration as evidence in ruling upon a demurrer to evidence or a motion for nonsuit or for a directed verdict." Cases cited include Balcom v. O'Brien, supra.

█ In our opinion the evidence viewed in its entirety sustains the verdict for actual damages. Also, the pleadings, proof and instructions were such that the jury could reasonably find that the value of plaintiff's labor and contributions during possession of the farm offset his debt for the hay.

SDC 1960 Supp. 37.1902 permits exemplary damages in addition to actual damages "In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed * * for the sake of example, and by way of punishing the defendant."

█ The burden of proof was upon appellee to establish all of the essential elements to sustain a recovery of exemplary damages. Stene v. Hillgren, 78 S.D. 1, 98 N.W.2d 156. One of these is that Noah acted with malice which may be inferred from the surrounding facts and circumstances. Zahrowski v. Dahl, 78 S.D. 255, 100 N.W.2d 802; Bogue v. Gunderson, 30 S.D. 1, 137 N.W. 595.

█ Appellant asserts there was no basis for awarding Hannahs exemplary damages. The rule supported by statute in this state is stated in 22 Am.Jur.2d, Damages, § 243, p. 334:

"As a general rule, exemplary damages are recoverable in all actions for damages based upon tortious acts which involve circumstances or ingredients, of malice, fraud, or insult, or a wanton and reckless disregard of the rights of the plaintiff."

And in the same text, § 250, p. 341:

"Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act, it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations. While it has been said that the term imports a wish to vex, annoy, or injure another (Bogue v. Gunderson, supra, cited in note,) it does not necessarily mean mere spite, ill will, or hatred."

The evidence shows about a week before the sale date Noah threatened to put a lien on the property, tie up the sale or stop the sale, and send the sheriff out for that purpose, unless Hannahs returned to work for Noah. It is also admitted that his only claim represented an unsecured indebtedness for hay sold and possibly a few dollars for use of pasture. There is no evidence whatsoever from which it can be inferred that Hannahs entrusted his livestock to Noah or that he had possession thereof as contemplated by the agister lien statute.

The evidence also shows that in implementation of his threats and well knowing Hannahs had made arrangements for the sale that Noah contacted a lawyer at Winner. The lawyer testified as a witness for Hannahs without objection. He produced his office notes. These notes were received into evidence, again without objection, and read: "Noah pasturing cattle for Hannahs on Noah's land—going to sell them without paying tab—doing this for several months." This was an obvious misrepresentation of true facts knowingly made. The document prepared and served corroborates the lawyer's notes.[3]

The effect of Noah's false representations was to stop the sale as threatened and it could not be held until Hannahs assigned from expected proceeds the amount claimed in the notice which had been served. The assignment reflects Noah's vindicative attitude and is further written corroboration of misrepresentation of facts to his counsel.

 The court instructed on exemplary damages in accord with the statute and defined the terms malice, fraud, and oppression. No exceptions were taken to these instructions. In our opinion the evidence was sufficient for the jury to find malice and the court did not err in submitting the question of exemplary damages to the jury.

 Appellant urged as a defense that the agister's lien was served upon the advice of counsel and the court by instruction to which there was no exception submitted this defense to

---

3. See Note 1, supra.

the jury.[4] The rule is generally stated in 25 C.J.S. Damages § 123(7), p. 1146:

"Advice of counsel, if in good faith, is proper for the consideration of the jury in connection with the question of exemplary damages, and the fact that defendant acted under advice of counsel may be sufficient to prevent an award of such damages. Advice of counsel is no defense, however, unless the advice was requested in good faith and on full disclosure, and was given in good faith with respect to a course involving legal questions and not questions of common morality; and the advice of counsel that defendant had the right to do the act complained of will not protect him from exemplary damages if it is done in a wanton and offensive manner, and in fact maliciously." Cases cited in support of rule are Perkins v. Stephens, 131 Mont. 138, 308 P.2d 620; Scalise v. Nat'l. Utility Service, 5 Cir., 120 F.2d 938.

In our opinion the trial court properly submitted the fact issue presented by this alleged defense to the jury who resolved it adversely to appellant.

Appellant also urges error on failure to give four requested instructions. We have considered the instructions as a whole and conclude those requested in essential particulars are included in those given which sufficiently state the law applicable to the case.

Appellant in his application for new trial and on this appeal contends the amount allowed as exemplary damages or punishment is excessive and not sustained by the evidence. In our opinion Noah's threats and actions preceding his consultation of an attorney were sufficient from which the jury could

---

4. "In this case the defendant in causing notice of the agister's lien to be served at the time of sale claims he acted upon the advice of his attorney. You are instructed that if the defendant stated fully and truthfully to his attorney all of the facts upon which his right to an agister's lien was based and thereafter proceeded as advised by his attorney that would be a complete defense to the plaintiff's demand for punitive or exemplary damages as claimed by the plaintiff. If the defendant did not make a full and truthful disclosure of all of the facts upon which the agister's lien is based to his attorney then he cannot use the defense that he acted on the advice of his attorney."

infer the malice essential to an award for exemplary damages. Nevertheless, his consulting an attorney is a mitigating circumstance and entitled to consideration. 25 C.J.S. Damages § 127.

This court in Bogue v. Gunderson, supra, said: "Great latitude is allowed in this class of cases. One purpose of exemplary damages is to deter the person against whom they are awarded from repeating the offense and others from committing it. An amount sufficient to serve this purpose in one instance might be wholly inadequate in another. Each action must be governed by its own peculiar facts." Conversely, an amount deemed adequate in one action may be excessive in another.

In Baumgartner's Electric Construction Co. v. De Vries, 77 S.D. 273, 91 N.W.2d 663, we quoted with approval the rule appearing in 22 Am.Jur.2d, Damages, § 263: "In assessing exemplary damages, the nature, extent, and enormity of the wrong, the intent of the party committing it, and, generally, all the circumstances attending the particular transaction involved, including any mitigating circumstances which may operate to reduce without wholly defeating such damages, may be taken into consideration * * *". This court in Stene v. Hillgren, supra, after reviewing facts and circumstances pertaining to that case applied these principles and reduced an award for exemplary damages to one-third of the amount awarded by the jury stating that it believed such amount adequate to deter others from similar acts and punish the defendant.

██ ██ The jury awarded Hannahs the exact amount he claimed as compensatory damages. The award was liberal. It also offset the value of the hay he purchased against his claim for services. It denied Noah's several counterclaims arising out of the transaction. We recognize that the amount of an award for exemplary damages must of necessity rest largely within the discretion of a jury. Nevertheless, this is not an absolute rule and such awards are subject to supervision and revision and we believe the facts here warrant a reduction of exemplary damages to the sum of $1,000.00 by this court.

It is, therefore, the order of this court that if within 30 days from the date of this opinion, plaintiff, the appellee herein, shall file in this court a written election to accept judgment in the sum of $2500, together with interest thereon at the legal rate from the date of judgment of the trial court and costs in that court, then the judgment of the trial court as modified by the election of the plaintiff will be affirmed and no costs shall be taxed in this court. If plaintiff does not so elect the judgment shall be reversed with costs on appeal to the appellant.

ROBERTS, and RENTTO, JJ., concur.

HANSON, P. J., and BIEGELMEIER, J., dissent.

BIEGELMEIER, Judge (dissenting).

My reading of the pleadings and undisputed testimony of plaintiff shows he owed E. B. Noah, defendant in the trial court who will be so referred to here, $429 for 35 3/4 ton hay and he was paid $25 on wages, a total of $454; plaintiff had $150 wages due him for 15 days labor and $70 machinery repair, a total of $220, thus leaving $234 due defendant on these contract items. On plaintiff's damage claim he testified the property sold was worth $8,000 and the undisputed evidence of the bank employee who clerked the sale showed it sold for $6,446.05 or a loss of $1,553.95. Plaintiff is bound by his own admissions of undisputed facts. Johnson v. Norfolk, 76 S.D. 565, 82 N.W.2d 656. The jury verdict was for the full amount of plaintiff's claim as stated in his complaint—$1,500, which on its face indicates it ignored the court's general and rather unclear instruction to "take into consideration the amount due to the defendant for the hay and * * * to the plaintiff for labor". Neither party excepted to this instruction even though it eliminated the $25 payment to plaintiff and $70 machinery repair claimed by defendant, which left $279 due defendant on the contract items. The instruction became the law of the case. Graham v. Arall, 80 S.D. 13, 117 N.W.2d 491. The jury therefore "took into consideration" only $53.95 of the $234 due defendant under the evidence and $279 due him under the unobjected instruction. The evidence therefore is insufficient to sustain the jury verdict for actual

damages. Though the assignments of error may not be a model, I believe defendant does raise this question by Assignment X where lack of credit for hay and some other items are mentioned and Assignment XIII, the Order Denying a New Trial, and paragraph VI of The Application for New Trial which called this to the attention of the trial court. The evidence being insufficient in this respect as to actual damages requires a reversal of the Judgment appealed from and a new trial on all issues. I would reverse.

HANSON, Presiding Judge (dissenting).

The evidence in this case is insufficient, in my opinion, to sustain recovery of any damages. In his dissent in which I concur Judge Biegelmeier points out the deficiency in the evidence regarding actual damages.

Plaintiff's cause of action for exemplary damages is based on defendant's alleged malicious, oppressive, and unlawful act of interfering with a farm auction sale. However, the facts show plaintiff took possession of defendant's farm under a written lease in expectation of receiving an FHA loan. When the loan was refused the parties tried to operate under a compromise arrangement which did not prove mutually satisfactory. During this period plaintiff purchased 35 ton of hay from defendant at $12.00 per ton. This was never paid.

When plaintiff made plans to sell out and leave defendant threatened action to collect the money owed. He sought the aid and advice of an attorney (not one of the attorneys of record) for this purpose. Instead of utilizing the collection remedy of garnishment to attach the farm auction sale proceeds the attorney prepared and served a Notice of Agister's Lien. Because of this notice the auction sale was delayed a short time.

Like the mechanic's lien our agister's lien is possessory in nature, Chapter 39.10. Notice of the lien is not necessary or authorized by statute. Such notice was the product of the attorney's imagination. He prepared it, signed it, and had it served upon plaintiff. This was all done without defendant's knowledge.

The first time defendant saw the Notice of Lien was after it had been served at the auction sale.

In my opinion the record fails to show any tortious, unlawful, or injurious act committed by defendant which would justify the imputation of exemplary damages. He did not threaten or initiate criminal proceedings. The result here places a creditor seeking payment of an honest debt in a precarious position if his attorney inadvertently pursues the wrong legal collection or compensatory remedy.

I would reverse.